UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ANA GUTIERREZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. M-04-439 |
| | § | |
| MCALLEN HOSPITALS, L.P. d/b/a | § | |
| MCALLEN MEDICAL CENTER, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Now before the Court for consideration are cross-motions for entry of final judgment filed by Plaintiff Ana Gutierrez and Defendant McAllen Medical Center ("McAllen Medical"). (Docs. 102 and 103).   McAllen Medical also moves for Judgment as a Matter of Law.

**I.     Background**

This is an employment discrimination claim brought pursuant to Title VII, 42 U.S.C. §2000e *et seq.*, in which Gutierrez argues that she was unlawfully discharged by McAllen Medical on the basis of her national origin.  For its part, McAllen Medical claims Gutierrez was terminated due to financial mismanagement and payroll discrepancies in the department she supervised.  Following the denial of Defendant's Motion for Summary Judgment (Doc. 62), the Court conducted a nine-day jury trial in this matter in December 2007.[1]

On December 14, 2007, the jury returned a verdict finding that Gutierrez had proven by a preponderance of the evidence that her national origin was a motivating factor in Defendant's decision to terminate her.  The jury, however, awarded Gutierrez no back pay, no front pay and

---

[1] Defendant moved for judgment as a matter of law at the close of Plaintiff's evidence, at the close of its own case and at the conclusion of trial.  The Court denied those motions.

no compensatory damages.  (Doc. 101).  However, the jury returned a verdict awarding Gutierrez $200,000 in exemplary or punitive damages.  *Id.*

Because the jury's verdict raised the question of whether punitive damages could be awarded in the absence of an award of actual or compensatory damages, the Court requested that both parties submit post-verdict briefing in support of their motions for entry of judgment.  After reviewing the parties' respective briefs, the Court finds that entry of judgment in conformance with the jury's verdict is proper.

## II.   The Parties' Arguments

Both parties argue that the jury's verdict is not in conformance with the evidence.

Specifically, Gutierrez argues that the jury's failure to award back pay is against the great weight of the evidence and asks the Court to exercise its equitable powers and award back pay in the amount of $341,829.94.  Plaintiff requests further that the Court order her reinstated to her prior position or, if reinstatement is not feasible, to award her reasonable front pay.  Finally, Gutierrez requests that the Court enter judgment for punitive damages in conformance with the jury's verdict and order that Plaintiff is entitled to recover reasonable attorney's fees and costs.

McAllen Medical, however, requests that the Court grant it judgment as a matter of law, arguing that there is insufficient evidence to support Plaintiff's discrimination claim. Alternatively, the Defendant requests that the Court affirm the jury's verdict of no back pay, no front pay and no compensatory damages.  Further, McAllen Medical argues that it cannot be liable for punitive damages based on the acts of its employee because the record demonstrates that it made a good-faith effort to comply with Title VII.  *See Kolstad v. Am. Dental Assoc.*, 527 U.S. 526 (1999) (employer not vicariously liable for managerial decisions of employee that are contrary to employer's good faith effort to comply with Title VII).

**III.   Defendant's Motion for Judgment as a Matter of Law**

McAllen Medical has moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50.  When, as here, a matter has been tried to a jury that has returned a verdict in the plaintiff's favor, the defendant's post-verdict motion for judgment as a matter of law "is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."  *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir.1997) (quoting *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995)).  In deciding whether such a motion should be granted, the Court gives great deference to the jury's verdict.  *Thomas v. Texas Dep't of Crim. Justice*, 220 F.3d 389, 392 (5th Cir. 2000). Accordingly, judgment as a matter of law should be granted only when the trial record is such that no reasonable jury could have found in favor of the plaintiff.  *See id*.  In making this determination, the Court must view all of the evidence and draw all reasonable inferences in a light most favorable to the plaintiff and must disregard all evidence favoring the defendant that the jury was not required to believe.  *Palasota v. Haggar Clothing Co*., 499 F.3d 474, 480 (5th Cir. 2007).   Additionally, the Court may not make credibility determinations or weigh the evidence, as those are functions left to the jury.  *Id.*

   a.  *Jury's Finding of National Origin Discrimination*

In its motion, the Defendant focuses on the sufficiency of the evidence supporting the jury's award of punitive damages and does not expressly contest the jury's finding that national origin was a motivating factor in McAllen Medical's decision to terminate Gutierrez.  In a footnote, however, the Defendant appears to argue that there is legally insufficient evidence to support the jury's finding of national origin discrimination.  (Doc. 105 at 5 n.1) (noting that its arguments as to the insufficiency of the evidence supporting the punitive damages claim also "negate the finding that national origin was a motivating factor in the hospital's employment

decision").  Even assuming for the sake of argument that Defendant intended with that footnote to challenge the jury's finding that Plaintiff's national origin was a motivating factor in McAllen Medical's termination decision, the Court holds that, viewing the evidence in a light most favorable to the Plaintiff, there is sufficient evidence to support the jury's verdict.

Specifically, the Plaintiff presented evidence at trial that Plaintiff's non-Hispanic supervisor, Rosemary Gaede, addressed Plaintiff in a derogatory manner by calling her "my little Mexican" at two lunch meetings, sent Plaintiff threatening e-mails and brought in Joanne Gamble—a non-Hispanic nurse who held the same position as Plaintiff but at a smaller, affiliated hospital—to watch over Gutierrez and investigate how she was running her department.  Gamble replaced Plaintiff at McAllen Medical following Gutierrez's termination.

Further, the record indicates that although Gutierrez was initially suspended pending investigation of her alleged mismanagement of her department's payroll, she was terminated just four days later.  McAllen Medical asserted at trial that Plaintiff's termination occurred in this manner because Gutierrez failed to provide a timely response to questions concerning payroll practices that McAllen Medical had posed to her at the time of her suspension.  Gutierrez, however, testified that she was unable to respond to the questions immediately because the payroll records needed to answer the questions were not made available to her during the four-day period between her suspension and termination.

McAllen Medical asserted at trial that the sole reason for Plaintiff's termination was that Gutierrez violated the hospital's payroll practices.  There is evidence in the record that, at various times during her tenure as Director of Surgical Services, Plaintiff failed to comply with McAllen Medical's payroll policies.  Gutierrez's own testimony at trial revealed that she did not always strictly follow required payroll procedures.  The jury, however, was entitled to disbelieve

McAllen Medical's assertion that the payroll issue was the *sole* reason for Plaintiff's termination.[2]

Given the evidence presented regarding Gaede's discriminatory animus towards Gutierrez and the manner in which Plaintiff's termination took place, the Court finds that a reasonable jury could conclude that Plaintiff's national origin was a motivating factor in McAllen Medical's decision to terminate her.

    b.  *Jury's Award of Punitive Damages*

As to the jury's award of punitive damages, McAllen Medical argues that (1) there is insufficient evidence to support the jury's award of punitive damages and (2) the Plaintiff cannot receive any punitive damages because she was not awarded any equitable relief or compensatory damages. Both of these arguments fail.

Punitive damages may be awarded in a Title VII case only if the plaintiff demonstrates that the employer engaged in discrimination with malice or reckless indifference to the federally protected rights of the employee.  42 U.S.C. § 1981a(b)(1).  The punitive damages inquiry focuses on the defendant's state of mind rather than on the nature of its egregious conduct.  *See EEOC v. E.I. Du Pont de Nemours & Co*, 480 F.3d 724, 732 (5th Cir. 2007).  Accordingly, the plaintiff must demonstrate that the employer discriminated "in the face of a perceived risk that its actions will violate federal law."  *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 536 (1999).  In the punitive damages context, an employer who demonstrates that it made a good-faith effort to comply with Title VII cannot be vicariously liable for acts by a managerial employee that are contrary to the employer's efforts.  *See id*. at 545-46; *see also Hatley v. Hilton Hotels Corp*., 308

---

[2] The Court notes that, despite facts in this case that appear to give rise to such a defense, the Defendant never expressly raised a "mixed-motive" defense during trial, nor did it request the jury be instructed on that defense or that a special interrogatory be included in the charge.  Although this was not a "mixed motive" case *per se*, the Court notes that the payroll mismanagement issues raised at trial may have nevertheless impacted the jury's verdict, particularly its award of no back or front pay.  *See generally infra* Part IV.b.

F.3d 473, 477 (5th Cir. 2002) (employer has made a good-faith effort to comply with Title VII when it "has a well-publicized policy forbidding [discrimination], … [given] training on [discrimination] to new employees, established a grievance procedure for [discrimination] complaints, and initiated an investigation of the plaintiffs' complaints").

McAllen Medical argues that it cannot be liable for punitive damages because it made a good-faith effort to comply with Title VII.  Specifically, Defendant argues that it had grievance and anti-discrimination policies in place during the time of the alleged discrimination and that as soon as the hospital received Gutierrez's grievance against Gaede it investigated her discrimination complaint pursuant to hospital policy.  Further, McAllen Medical argues that Gaede was not the sole decision maker in Plaintiff's termination and, in compliance with hospital policy, Plaintiff was initially suspended from her position with pay and was only terminated after she failed to assist in the hospital's investigation of the payroll discrepancies in her department.

The Court, however, finds that the Defendant has failed to prove that it made a good-faith effort to comply with Title VII.  McAllen Medical did present evidence that it had formal grievance and anti-discrimination policies in place at the time of the alleged discrimination.  (*See* Defendant's Tr. Ex. Nos. 8 and 10).  However, McAllen Medical has not provided any evidence regarding the efforts it has made, or the specific training it has in place, to ensure the proper implementation of, and compliance with, these policies.  *See, e.g., Deffenbaugh-Williams v. Wal-Mart Stores, Inc.,* 188 F.3d 278, 286 (5th Cir. 1999) (mere existence of a company policy that encourages employees to contact higher managers with grievances does not establish good-faith compliance with Title VII as a matter of law).

More significantly, evidence presented at trial supports a finding that McAllen Medical failed to comply with its own antidiscrimination policies.   Specifically, Ellie Bucher,

Defendant's human resource director, testified that when she received Plaintiff's grievance against Gaede—which included allegations that Gaede was discriminating against Gutierrez and others based on their national origin—Bucher sent a copy of it to Gaede even though hospital policy required that the grievance be kept confidential.  Moreover, Bucher testified that she sent the grievance to Gaede during the four-day period between Plaintiff's suspension and termination.  During those four days, Gaede was actively involved in deciding whether Gutierrez should be terminated.[3]  Bucher testified that she sent the grievance to Gaede for a response as part of the hospital's investigation.  Nevertheless, the record reveals that the hospital terminated Gutierrez prior to resolving her grievance and allowed Gaede, the subject of Gutierrez's complaint, to participate in the termination decision with full knowledge that Gutierrez had filed a grievance against her.

Based on the foregoing, the Court finds that McAllen Medical failed to prove that it made a good-faith effort to comply with Title VII.  Although the evidence supporting punitive damages is not overwhelming, when viewed in a light most favorable to the Plaintiff the Court finds that a reasonable jury could have found that the Defendant or its managerial agents engaged in discrimination against the Plaintiff "in the face of a perceived risk that its actions … violate[d] federal law."

Finally, McAllen Medical argues that Gutierrez cannot receive an award of punitive damages in this case because she was not awarded back pay, front pay or compensatory damages.  This argument, however, was recently rejected by the Fifth Circuit.  *See Abner v. Kan. City S. R.R. Co.*, 513 F.3d 154 (5th Cir. 2008)  In *Abner*, the court held that punitive damages may be awarded in Title VII cases even in the absence of any other award.  *See id.* at 163.

---

[3] The Defendant asserted at trial that the decision to terminate the Plaintiff was made jointly by Gaede, Bucher and other hospital management.

(finding that "preventing juries from awarding punitive damages when an employer engaged in reprehensible discrimination without inflicting easily quantifiable physical and monetary harm would quell the deterrence that Congress intended in the most egregious discrimination cases under Title VII").  Indeed, in this case it appears that the jury found that, although Plaintiff failed to prove she suffered any quantifiable damages as the result of Defendant's unlawful conduct, McAllen Medical should nevertheless be punished for its discriminatory conduct via an award of punitive damages.

The jury's award of $200,000 in punitive damages is within the statutory cap of $300,000 for a Title VII claim involving an employer with over 500 employees.[4]  42 U.S.C. § 1981a(b)(3)(D).  A Title VII punitive damages award is constitutionally valid if the award is within the statutory cap and supported by sufficient evidence.  *Abner*, 513 F.3d at 164.  Accordingly, judgment will be entered against the Defendant in the amount of $200,000.

## IV.    Jury's Failure to Award Back and Front Pay and Compensatory Damages

*a.  Whether the Jury's Verdict as to Back and Front Pay Should be Treated as Advisory*

As an initial matter, the Court must address whether the jury's verdict as to back and front pay should be treated as merely advisory.

Because back and front pay are equitable remedies under Title VII, there is no right to a trial by jury on those issues; however, the court may always empanel an advisory jury on such matters.  *See Rutherford v. Harris County*, 197 F.3d 173, 188 (5th Cir. 1999).  Moreover, with the consent of both parties a court may order a jury trial on an issue not triable by right to a jury, and the jury's verdict will have the same effect as if the jury trial had been a matter of right.  FED. R. CIV. P. 39(c).  The parties' consent to a nonadvisory jury on an equitable matter may be

---

[4] The Defendant stipulated that at all times relevant to this case it has employed more than 500 people. *See* Joint Pretrial Order at 3 (Doc. 75).

either express or implicit. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 795-96 (5th Cir. 1999). The Fifth Circuit has held that when "one party demands a jury, the other does not object, and the court orders a jury trial, this will be regarded as trial by consent." *Id.* at 795 n. 101 (citing C. Wright & A. Miller, 9 FEDERAL PRACTICE & PROCEDURE § 2333 (1971)). Once the parties have consented to a trial to a nonadvisory jury on an equitable matter, the Court must provide notice in advance of the verdict if it intends to regard the verdict as advisory. *Id.* at 796.

Here, neither party expressly consented to having the jury decide the back and front pay questions. However, the Plaintiff requested a trial by jury, without limitation, and requested in her proposed jury instructions that the Court submit the back and front pay questions to the jury. (Doc. 87). The Defendant included only the back pay question in its proposed instructions. (Doc. 88). Prior to their post-verdict motions for entry of judgment, neither party requested that the jury's verdict as to back pay be treated as advisory and the Court never indicated it would treat the verdict as merely advisory on the back pay question. Given this, the Court finds that the parties are deemed to have implicitly consented to a nonadvisory jury as to back pay.

As to front pay, however, there was some discussion during the course of the trial as to whether the front pay question would be submitted to the jury or decided by the Court. During a bench conference on December 6, 2007, the Court indicated that it would submit the front pay question to the jury and decide after the verdict was returned whether to conform the judgment to the verdict. Accordingly, Plaintiff's counsel was informed that any evidence it wished to present regarding front pay should be offered during the course of trial. Given the Court's statements at trial, the Court will treat the jury's verdict on front pay as advisory.

    *b.  Back Pay*

Back pay is an equitable remedy under Title VII that is intended to restore the plaintiff to the position she would have been in the absence of the unlawful termination.  *See Julian v. City of Houston*, 314 F.3d 721, 729 (5th Cir. 2002).

The Plaintiff asks the Court to disregard the jury's determination that Gutierrez is owed no back pay, arguing that this finding is against the great weight of the evidence.  McAllen Medical argues that there is ample evidence in the record to support a finding that the Plaintiff failed to mitigate her damages and that the jury's verdict should stand.

A Title VII claimant suing for back pay must mitigate her damages by exercising "reasonable diligence to obtain substantially equivalent employment."  *West v. Nabors Drilling USA, Inc*., 330 F.3d 379, 393 (5th Cir. 2003) (quoting *Migis v. Pearle Vision, Inc*., 135 F.3d 1041, 1045 (5th Cir. 1998)).  Employment is "substantially equivalent" if it "affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990).  It is the Defendant's burden to prove a failure to mitigate damages by demonstrating that comparable work existed and the employee failed to make reasonable efforts to obtain such work.  *Id.*

A fact-finder's back pay determination should only be set aside if it is clearly erroneous. *EEOC v. E.I. Du Pont de Nemours & Co*, 480 F.3d 724, 731 (5th Cir. 2007) (citing *Brunnemann v. Terra Int'l, Inc*., 975 F.2d 175, 178 n.5 (5th Cir. 1992)).  At first glance, the jury's failure to award back pay in this case is somewhat odd, considering that the parties appeared to agree at trial that Plaintiff's lost wages, properly calculated, amounted to somewhere between

$263,394.74 and $293,363.94.[5]  (Plaintiff's Tr. Ex. No. 61).  However, while the Defendant did not dispute the Plaintiff's wage calculations at trial, it did argue that Plaintiff failed to mitigate her damages and that some of her alleged lost benefits, such as the penalties she paid for early withdrawal of her 401K, were not caused by her allegedly unlawful termination.

Based on the record developed at trial, the Court cannot say that the jury's determination of no back pay is clearly erroneous or that no reasonable jury could have reached such a verdict. First, there is evidence in the record supporting a finding the Gutierrez failed to mitigate her damages.  The record reveals that Plaintiff did not begin looking for work until May 2004, over a year after her termination. McAllen Medical produced evidence that this area of the state has a large number of health care facilities, yet Plaintiff did not seek employment at a significant number of them.  Indeed, the evidence of Gutierrez's diligence in searching for new employment was sparse and a reasonable jury could have found that Plaintiff failed to use reasonable efforts to find comparable employment following her termination.  *See Giles v. GE*, 245 F.3d 474, 493 (5th Cir. 2001) (award of no back pay affirmed when record revealed plaintiff had documented very little of his asserted job search).

Moreover, Gutierrez's back pay claim turned on her assertion that she would have continued to receive positive performance reviews and significant raises, had she not been unlawfully terminated.  However, the jury could have found that, given the evidence presented at trial regarding the discovery of payroll mismanagement in Plaintiff's department, it was unlikely that Plaintiff would have continued to receive positive job evaluations.  Indeed, although the jury

---

[5] The amount of back pay was calculated as a range because Plaintiff's expected earnings, had she not been terminated, were dependent on the ratings she would have received in performance reviews.  Plaintiff argued that, based on her past performance reviews, it was likely she would have earned high performance ratings and would have thus received the largest raises possible.  Based on this assumption, the Plaintiff asked the jury to award her $293,363.94 in lost wages.  The Plaintiff also offered evidence that her lost benefits during the time period between her termination and trial amounted to approximately $46,500 to $48,500.

rejected McAllen Medical's assertion that the payroll discrepancies were the *sole* reason for Plaintiff's termination, the jury's failure to award back pay in this case could have been reasonably based on a conclusion that, even in the absence of the found discrimination, Gutierrez would have likely lost her job because of the financial mismanagement issue.

The jury was fully instructed on back pay damages and is presumed to have followed the Court's instructions.   Therefore, based on the foregoing, and in conformance with the jury verdict, the Court will enter judgment awarding no back pay to Plaintiff.

### c.   Front Pay

Front pay is money awarded to a Title VII plaintiff for lost future compensation and is intended to compensate a victim for the lingering effects of discrimination until she can be made whole.  *See Sellers*, 902 F.2d at 1196. The jury returned a verdict that awarded no front pay to the Plaintiff.  As with the back pay award, the Plaintiff argues that the jury's verdict goes against the weight of the evidence.[6]  Rather than award front pay, however, the Plaintiff requests that the Court order the Plaintiff reinstated to the position from which she was terminated on January 31, 2003.

While reinstatement is the preferred remedy for discriminatory discharge, front pay may be awarded when reinstatement is not feasible.  *EEOC*, 480 F.3d at 732.  McAllen Medical

---

[6] After both parties rested on December 12, 2007, the Defendant moved for judgment as a matter of law as to each element of damages. When the Court expressed an inclination to not submit a question to the jury regarding future damages, an exchange ensued between the Plaintiff and the Court regarding the sufficiency of the evidence as to front pay. The Plaintiff argued that it "would have" put on evidence supporting such an award, but was prevented from doing so when the Court sustained the Defendant's objection to the presentation of additional evidence on damages during Plaintiff's testimony on December 11, 2006.  On December 11, Plaintiff returned to the stand after the close of her case-in-chief for the limited purpose of introducing calculations for her lost wages, as both parties had agreed to stipulate to a range for those damages in order to expedite the trial.  However, when Plaintiff's counsel attempted to also question the Plaintiff regarding *compensatory* damages, Defendant objected on the grounds that that information was outside the scope of the agreed testimony.  In the ensuing bench conference, Plaintiff's counsel indicated he just wished to "throw a number out there" for Plaintiff's mental anguish damages.  The Court, however, sustained Defendant's objection to this testimony, finding that Plaintiff had already presented its evidence on mental anguish during its case-in-chief.  At no time during the December 11 bench conference did Plaintiff's counsel indicate that he wished to put on additional evidence regarding front pay. Accordingly, the Plaintiff was not prevented from presenting specific evidence to support her front pay claim; she just merely failed to do so.

argues that reinstatement is not feasible in this case because it produced evidence at trial, which was not refuted, that Gutierrez committed multiple payroll violations while serving as Director of Surgical Services at McAllen Medical.   This evidence calls into question the feasibility of Plaintiff returning to that position, as the investigation into Plaintiff's payroll practices appears to have engendered a significant amount of distrust and animus between McAllen Medical and Gutierrez.   Moreover, Plaintiff's former position can be held by only one person and the job is occupied currently by Mario Garza, an individual who has held the position for over four years. Based on this, the Court finds that reinstatement of Plaintiff to her former position, or a comparable position, is not feasible.

Therefore, the Court must consider the propriety of awarding front pay in lieu of reinstatement.   After reviewing the post-verdict pleadings, the Court finds that it is proper to adopt the jury's verdict of no front pay.

The evidence presented at trial[7] indicated that Plaintiff expected to earn approximately $81,000 in 2007.   Plaintiff argued that, had she remained in her position at McAllen Medical and continued to receive exemplary performance reviews, she would have earned approximately $88,000 to $97,000 in 2007.   Though not equal, Plaintiff's current earning capacity[8] is very close

---

[7] The Plaintiff requests in its post-verdict pleadings that, if the Court finds reinstatement is not feasible, it hold an evidentiary hearing on the issue of front pay.   The Court, however, finds that the Plaintiff has failed to demonstrate why additional evidentiary proceedings on front pay are warranted.   During trial, the Court informed Plaintiff's counsel that it intended to submit the front pay question to the jury and, accordingly, instructed counsel that it should present its evidence in support of front pay during the course of trial.   Plaintiff, however, did not submit any evidence regarding Plaintiff's expected future earnings during the course of trial.

[8] The Plaintiff informed the Court in her Motion for Entry of Judgment that she was terminated from her most recent position at the end of December 2007, apparently as a result of being absent from work to attend this trial.   This change in circumstance, however, does not alter the Court's finding that no front pay is warranted.   Front pay is intended to help meet the goals of Title VII by compensating a Title VII plaintiff for the lingering effects of the unlawful discrimination.   *See Floca v. Homecare Health Services, Inc.*, 845 F.2d 108, 112 (5th Cir. 1988)   The evidence demonstrates that at this point, some five years since Plaintiff's termination, the Plaintiff's earning capacity is roughly equal to what it would have been had she not been terminated unlawfully.   Plaintiff's own pleading concedes that her recent termination is not due to the unlawful discrimination that occurred over five years ago. Accordingly, the Court finds that, despite this change in Plaintiff's circumstances, no additional front pay is warranted.

what it would have been had she not been terminated.[9]  Further, Plaintiff offered no evidence at trial as to what she expected to earn in the future; thus, the Court finds no there is no evidentiary basis for assuming that there will be a progressively widening gap between Plaintiff's actual earnings and what she could have earned had Defendant's unlawful discrimination not occurred.

Accordingly, the Court agrees with the jury's verdict and finds that an award of front pay is not appropriate in this case.

### d.  Compensatory Damages

Neither party has requested the Court alter the jury's award of no compensatory damages. Accordingly, the Court will enter judgment in conformance with the jury's verdict.

## V.      Attorney's Fees

At the discretion of the Court, a prevailing party in a Title VII action may be awarded reasonable attorney's fees.  *See* 42 U.S.C. § 2000e-5(k).  Plaintiff is the prevailing party in this case because she has obtained an enforceable judgment against McAllen Medical which has materially altered the legal relationship between the parties.  *See Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).  Therefore, the Court finds that Plaintiff is entitled to reasonable attorney's fees. Pursuant to Federal Rule of Civil Procedure 54(d), the Court directs Plaintiff to file her motion for attorney's fees within 14 days of entry of final judgment.

## VI.     Conclusion

Based on the foregoing and in accordance with the jury verdict, the Court finds the Plaintiff is entitled to receive no back pay, no front pay and no compensatory damages.

---

[9] Plaintiff's projected salary of $88,000 to $97,000 for 2007, had she not been terminated from McAllen Medical, is based on the assumption that she would have received exemplary performance reviews in every year from 2003 to 2007.  As the Court noted earlier, however, given the payroll mismanagement issues found in Plaintiff's department, it is unlikely that Plaintiff's performance reviews would have continued to be as positive as they had been prior to 2003.

However, Plaintiff is entitled to receive $200,000 in punitive damages as well as reasonable attorney's fees.

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a judgment will be entered in conformance with this opinion.


SO ORDERED this 29th day of September, 2008, at McAllen, Texas.

Randy Crane
United States District Judge